# LEONA WILHELMINA FLEISCHER v. STATE DEPARTMENT OF HIGHWAYS.

77 N. W. (2d) 288.

May 25, 1956—No. 36,808.

*Johanson, Winter & Lundquist,* for relator.

*Miles Lord,* Attorney General, *Robert W. Mattson,* Deputy Attorney General, and *G. A. Hatfield,* Special Assistant Attorney General, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Writ of certiorari to review a decision of the Industrial Commission.

This case was commenced by a petition of Leona Wilhelmina Fleischer to the Industrial Commission. It was alleged in the petition that the petitioner's husband was on December 12, 1952, employed by the State of Minnesota, Department of Highways, in the capacity of equipment operator and that on that date he sustained an accidental injury arising out of and in the course of said employment and as a result therefrom died on December 17, 1952.

A hearing was held before a referee who found, after the hearing had been concluded, that on December 12, 1952, Fred Fleischer was employed under a Minnesota contract of hire by the State of Minnesota, Department of Highways; that on that date he had suffered an accident arising out of and in the course of his employment; and that as a result of this accident Fleischer died on December 17, 1952. Referee concluded that petitioner was entitled to compensation. The employer then appealed to the Industrial Commission from the findings of fact and decision of the referee. The commission reversed the referee and found among other things that neither on December 12, 1952, nor at any time material herein did the employee suffer an accidental injury arising out of or in the course of his employment.

The only question raised on appeal here which we deem it necessary to determine is whether the commission's decision that the employee did not suffer an accidental injury arising out of and in the course of his employment is sustained by the record.

There is evidence in the record that Fleischer's work consisted of operating various types of trucks and equipment and doing maintenance work and other general labor in connection with maintaining state highways and that on December 11 Fleischer worked 11 hours and on December 12, the last day of his employment, he worked 12 hours, 11 of which he was blading and removing ice and snow. The record also shows that on December 12 Fleischer was operating a machine called a pull blade. This was done with Fleischer in the

cab of the pull blade and the machine itself being pulled by a truck. The record further shows that this particular pull blade was more than 24 years old and was manually operated in that it had no power control devices for its movement or operation. It is also in the record that on the night of December 12 Fleischer returned home from work a little after 8:30. His wife testified that he acted tired as he sat down on a chair and that she took off his rubbers; later that evening, however, Fleischer and his wife went to the home of a neighbor about two blocks away where they remained until about 11:30 p. m., when they returned to their own home. While at the neighbor's home Fleischer had some coffee and a sandwich but apparently did not consume it all. Shortly after reaching his own home Fleischer went to bed, but according to his wife he apparently did not go to sleep. At approximately 1:00 a. m. on December 13 Mrs. Fleischer called a doctor as her husband appeared to be in great pain. Fleischer did not again return to his employment and died on December 17, 1952.

An autopsy was performed on December 19 and it was found that the sac which contained the heart contained about one-half pint of solid blood clot. Petitioner's doctor testified that employee died from a ruptured heart or of a tamponade of the pericardium which was the result of myocardial infarction and this was the result of coronary thrombosis.

Under the decisions of this court construing M. S. A. 1949, § 176.02, as it existed at the time of the occurrence of the incident relied upon here, and because of the use of the word "accident" in that statute, it was necessary for the claimant to show some unusual exertion which caused the formation of the blood clot and the resulting death. Golob v. Buckinghom Hotel, 244 Minn. 301, 69 N. W. (2d) 636.

Subsequent to the dates of the alleged "accident" and death of Fleischer in December 1952, the legislature modified the 1949 statute referred to above by L. 1953, c. 755, § 2 (M. S. A. 176.021). The word "accident" is not used in the 1953 statute, and it is no longer necessary to prove unusual exertion. See, Golob v. Buckinghom Hotel, *supra*.

We are confronted with two issues in this type of case—whether the employee was subjected to exertion which was out of the ordinary or unusual when compared with his ordinary work so as to constitute a hazard and whether the death of the employee was caused by his work. Erholtz v. Balkan Min. Co. 245 Minn. 73, 70 N. W. (2d) 863. See, also, Simon v. Village of Plainview, 237 Minn. 136, 54 N. W. (2d) 32. Inasmuch as the commission found that there was no accidental injury here we are not concerned with the second issue.

In respect to whether there was such unusual exertion as to constitute an accident when compared with his ordinary work, the record contains evidence that, although the ordinary workday was eight hours, the employees sometimes worked longer than eight hours if there was a lot of snow or some other emergency; that as a part of the employee's work he was required to lift rolls of snow fence weighing 200 to 300 pounds and steel culverts weighing in excess of 100 pounds; and that, although the scraper which the employee operated on December 12 was an older machine, it was well built and the mechanism was controlled with a maximum effort of 30 pounds. The employee's supervisor, who drove the truck which pulled the machine on December 12, 1952, testified that it was harder to drive the truck than to operate the blade, and a fellow employee, George Reckner, testified that he would rather operate the pull blade than a big power patrol.

It is an established rule of this court that in reviewing the findings of the Industrial Commission the function of the Supreme Court is not to determine whether on the facts the decision of the commission is correct, or even preferable to another determination, but rather, and only, to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424; 6 Dunnell, Dig. & Supp. § 10426.

We have repeatedly held that where there is evidence reasonably supporting the findings of the commission either by direct testimony or statements or permissible inferences from the evidence the find-

ings must be sustained. Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424; Simpson v. Gold, 221 Minn. 528, 22 N. W. (2d) 923; Zobitz v. City of Ely, 219 Minn. 411, 18 N. W. (2d) 126; Bergstrom v. Brehmer, 214 Minn. 326, 8 N. W. (2d) 328; Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. (2d) 812; Tometz v. Biwabik Min. Co. 171 Minn. 302, 213 N. W. 897.

While it is true that the evidence is in conflict here we cannot say that there was no evidence which reasonably supported the commission's findings either by direct testimony or statements or permissible inferences from the evidence. It is therefore our opinion under the record here that the commission's findings that there was no accident must be sustained.

We cannot say in view of the evidence in the record that the commission's findings have no sufficient basis of inference reasonably to be drawn from the facts. Even if we would have found differently were we the trier of facts, we must affirm the findings of the Industrial Commission.

Affirmed.