**Adeline KIRNAN, Petitioner and Appellant,**

v.

**DAKOTA MIDLAND HOSPITAL, Employer and Appellee,**

and

**St. Paul Companies, Insurer and Appellee.**

**No. 13860.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 18, 1983.

Decided March 9, 1983.

Rehearing Denied April 7, 1983.

Julie M. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for petitioner and appellant.

Harvey C. Jewett of Siegel, Barnett & Schutz, Aberdeen, for appellees.

DUNN, Justice.

This is an appeal from an order affirming the final decision of the Division of Labor and Management (Division) of the South Dakota Department of Labor which denied Adeline Kirnan (appellant) workers' compensation claim. We reverse and remand.

Appellant had been employed by Dakota Midland Hospital in Aberdeen, South Dakota (one of the appellees in this case), for a period of approximately eight years before the date of her injury. Appellant performed general housekeeping duties which included vaccuming, dusting, cleaning and scrubbing patient rooms, nurses' stations and hallways in the hospital. When a patient was dismissed, appellant's duties were expanded and required her to lift mattresses and springs, to wash and fold the mattresses and to replace dirty linen.

On Saturday, May 20, 1978, appellant reported to work at 8 a.m. after having the previous day off. Appellant testified that she did not feel well that morning but had still reported for work as she had on other occasions when she did not feel well. After arriving at work, appellant was assigned to C-Wing and was also assigned as a "floater" to aid the women in the other wings if need be. While she felt some pressure to quickly finish her rooms in order to be available for "floater" duty, she apparently was not working at an abnormal pace on this Saturday morning. Appellant was quite certain that there was one dismissal that morning which required she perform more arduous duties. Between 8 a.m. and 10 a.m., appellant cleaned four rooms, one of which may have involved a dismissal, and then went for coffee. When appellant returned from her fifteen-minute coffee break, she went to her work station, and armed with cleaner and cloth, prepared to clean a sink. Almost immediately, she became extremely ill and was later diagnosed to have suffered a heart attack.

Prior to her heart attack, appellant led a relatively healthy and vigorous life style; the only noted exception was a cataract surgery in 1977. Evidence was introduced, however, which indicated that appellant had a preexisting arteriosclerotic heart disease (a narrowing of the arteries in and around the heart) as well as atrilalfibrillation (an irregular heart beat). Appellant had been taking a daily medication for the latter condition for some time prior to the heart attack.

Following an administrative hearing, the Division issued a decision denying appellant's workers' compensation claim. An appeal was taken to the trial court and a subsequent order was issued by that court affirming the decision of the Division. Appellant now appeals from that order.

We begin by examining the operative statute in this appeal. Prior to 1975, SDCL 62–1–1 defined "injury" as:

[O]nly injury *by accident* arising out of and in the course of the employment, and shall not include a disease in any form except as it shall result from the injury[.]

(Emphasis supplied.) This statute was amended in 1975 when the legislature deleted the phrase "by accident" from the definition of injury.

The pre-1975 statute has been interpreted on numerous occasions. In cases involving the aggravation of a preexisting disease, this court has adopted the "unusual exertion rule." This position was set forth in *Oviatt v. Oviatt Dairy Co.,* 80 S.D. 83, 85, 119 N.W.2d 649, 650 (1963), in which this court stated:

It is settled law in this state that disease, or the aggravation of an existing disease, is compensable, but that such disease or aggravation must be assignable to a definite time, place and circumstance, and that the disease, or aggravation of such disease, must result from unusual exertion. (citations omitted)

The proposition that the law requires unusual exertion be assignable to a definite time, place and circumstance was most recently reaffirmed in *Wold v. Meilman Food Industries,* 269 N.W.2d 112 (S.D.1978).

▮ None of these cases, however, have interpreted the statute in light of the 1975 amendment which deleted the phrase "by accident." By deleting this phrase, South Dakota joined the states of California, Iowa, Maine, Massachusetts, Minnesota, Pennsylvania and Rhode Island in eliminating the requirement. 1B Larson, Workmen's Compensation Law § 37.10. Deletion of "by accident" has resulted in the rejection of the unusual exertion requirement in these jurisdictions. For example, soon af-

ter the deletion of "accident" from their statute, the Minnesota Supreme Court noted that it was no longer necessary to prove unusual exertion. *Fleischer v. State of Minnesota, Dept. of Highways,* 247 Minn. 396, 77 N.W.2d 288 (1956); *Golob v. Buckingham Hotel,* 244 Minn. 301, 69 N.W.2d 636 (1955). We agree with the approach taken by Minnesota and other jurisdictions which have deleted "by accident" from their statutes and we too choose to abandon the unusual exertion requirement.

This court's interpretation of SDCL 62–1–1 as amended was anticipated by the Division. The Division properly discarded the unusual exertion rule and proceeded to the relevant test of causation: whether the injury was one arising out of and in the course of the employment. 1B Larson, Workmen's Compensation Law, § 38.30. As noted by the Minnesota Supreme Court in *Peterson v. Ruberoid Company,* 261 Minn. 497, 499, 113 N.W.2d 85, 86 (1962):

[T]he fact that an employee dies from a heart attack at his usual place of employment and during his usual hours thereof is not sufficient, in itself, to impose coverage under the Workmen's Compensation Act. The claimant has the burden of establishing a causal connection between the employment and the disability. In other words, it must be shown that the heart attack was brought on by strain or overexertion incident to the employment, even though the exertion or strain need not be unusual or other than that occurring in the normal course of the employment.

■ The Division found in its findings of fact "[t]hat no credible evidence was intro-duced that petitioner's heart attack was caused or contributed to by petitioner's work at Dakota Midland Hospital on May 20, 1978." In reviewing the actions of an agency, we are to give great weight to the findings made on questions of fact and may reverse only if the findings are clearly erroneous in light of the entire evidence in the record. SDCL 1–26–36; * *Barkdull v. Homestake Min. Co.,* 317 N.W.2d 417 (S.D. 1982). After examining the entire record, we are convinced that the finding of the Division that there was no credible evidence in the record to establish causation is clearly erroneous.

The direct testimony of this 67-year-old lady reveals that she did not feel well on the morning of May 20, 1978, but went to work as she had on other days when she did not feel well. She was responsible for C-Wing and was also a "floater" in helping in other wings when needed. Between 8 and 10 a.m., she had cleaned four rooms and was also quite certain that there had been one dismissal interspersed during the morning. At 10 a.m., she took a fifteen-minute coffee break and then pushed her cart to another room. As she picked up cleaner and cloth to clean a sink, appellant became extremely ill, was taken to the emergency room and later to the intensive care unit where she was diagnosed as having suffered a severe heart attack.

Dr. Carter, her attending physician, was in the hospital at the time of the heart attack and immediately took charge of the patient. He later testified as to her condition and as to the disability stemming from the heart attack. He also testified that the

---

* SDCL 1–26–36 provides:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court need not enter its own findings of fact and conclusions of law but may affirm, modify or reverse the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

heart attack was brought on by appellant's work on that day. He was cross-examined extensively as to the exact strenuous work appellant was performing that day, and its possible connection with a heart attack. The doctor conceded that appellant may have had a coronary condition for many years, but in his opinion "the precipitating event of the coronary occlusion, the closure of the blood vessel, was the work she was doing that day"—and he never deviated from that opinion.

It seems clear from appellee's cross-examination of the doctor and appellant that appellee had the mistaken belief that some unusual strain or exertion is necessary before appellant is entitled to workers' compensation. This is not true under the amended statute. While there must be a causal connection between the employment and the disability, "the exertion or strain need not be *unusual* or other than that *occurring in the normal course of the employment.*" *Peterson*, 261 Minn. at 499, 113 N.W.2d at 86 (emphasis supplied).

While the Division paid lip service to this change in the law, it then found as a fact "that no credible evidence was introduced that petitioner's heart attack was caused or contributed to by petitioner's work at Dakota State Hospital on May 20, 1978." We conclude that this finding is clearly erroneous as it completely ignores the following facts:

1. The appellant was working at the hospital in the regular course of her employment when the heart attack occurred.

2. The heart attack occurred after appellant had worked for two hours, cleaned four rooms and possibly had cleaned one room in which there had been a dismissal; had taken a fifteen-minute coffee break, and had just picked up the tools of her trade to clean another room.

3. The testimony of Dr. Carter (the only doctor who ever examined her) that "the precipitating event of the occlusion, the closure of the blood vessel, was the work she was doing that day."

All of the cross-examination of appellant and of the doctor was designed to demonstrate that there was no "unusual" exertion or strain that morning—as compared to the work she had been doing for eight years. While testimony on cross-examination established that appellant was not "scrubbing a wall," or "lifting a mattress," or any other strenuous task, it is all irrelevant in view of the rule that the causal connection can be substantiated without demonstrating "unusual exertion" on the part of appellant.

The fact remains that the heart attack occurred during the course of appellant's employment of cleaning and scrubbing patients' rooms and bathrooms on May 20, 1978. While we acknowledge that establishing causality in heart attack cases is not a precise art, and that her attack cannot be assigned to any unusual exertion or strain on that morning, it is nevertheless compensable under the amended statute and our interpretation of that statute. We conclude that appellant did establish a reasonable connection between her employment and the disabling heart attack suffered in this case.

The order of the trial court affirming the decision of the Division is reversed.

All the Justices concur.

